**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**LOUIS E. WARREN, Jr.,**

      **Plaintiff**

**v.**                                                              **Case No:**

                                                  **Jury Trial Demanded**

**MAIN INDUSTRIES, INC.,
a Virginia corporation**

**Serve: Richard C. Mapp, III, Reg. Agent
       KAUFMAN & CANOLES
       150 W. Main St., Suite 2100
       Norfolk, Virginia 23510**

      **Defendant**

## COMPLAINT

COMES NOW the Plaintiff, Louis E. Warren, Jr. ("Plaintiff" or "Mr. Warren"), by counsel, and as and for his Complaint against the Defendant, Main Industries, Inc. ("Defendant" or "Main") states as follows:

### The Parties

1.     Plaintiff is a natural person and a resident of Isle of Wight County, Virginia.

2.     Defendant is a Virginia corporation with its principal office located in Hampton, Virginia. Defendant employs in excess of fifteen employees and has so at all relevant times.

3.     Defendant's business consists of, *inter alia*, providing contract services at shipyards in and around the Hampton Roads area including, but not limited to ship repair and maintenance.

1

**Jurisdiction and Venue**

4.      This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant conducts business within this judicial district and division and the events complained of herein took place within this judicial district and division.

**Exhaustion of Administrative Remedies**

6.      Prior to instituting this civil action, Plaintiff timely filed an administrative claim with the Norfolk office of the Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit 1.

7.      On or about September 16, 2016, the EEOC mailed a "right to sue" letter to Plaintiff after failing to resolve the Plaintiff's administrative claim. *See* Exhibit 2. Plaintiff received the letter a few days later. Plaintiff has filed the instant civil action within ninety (90) days of his receipt of notice authorizing him to file this civil action.

**Facts and Background**

8.      Mr. Warren is an African-American male.

9.      Mr. Warren was employed as a painter by Main for approximately sixteen years until his termination on or about December 16, 2015.

10.      On or about December 16, 2015, he was terminated following a physical altercation with a white male Main employee, Ray Lunsford ("Mr. Lunsford").

11.      Mr. Lunsford was the instigator of the physical altercation.

12.     On or about December 16, 2015, both Plaintiff and Mr. Lunsford were working for Defendant on a jobsite at Huntington Ingalls/Newport News Shipbuilding within the City of Newport News, Virginia.

13.     Prior to instigating the altercation with Plaintiff, upon information and belief, Mr. Lunsford told a Main supervisory employee, Richard "Ricky" Brown, a white male, that he was going to "whip Louis' a--." Mr. Brown did nothing to prevent the altercation.

14.     Prior to instigating the altercation with Plaintiff, upon information and belief, Mr. Lunsford told another Main employee that he was going to "f--- Louis up when we get off."

15.     While Mr. Lunsford was broadcasting his intent to fight Plaintiff, Plaintiff was still finishing his work painting onboard a ship and was unaware of Mr. Lunsford's threats.

16.     Mr. Lunsford's statements of intent that he was going to fight Mr. Warren were so quickly and widely known that, upon information and belief, multiple other Main employees and others in the vicinity began placing bets on the outcome.

17.     Shortly thereafter, when Mr. Warren came off of the ship on which he was working, he was accosted by a worker known to him only as "Booger" and/or "Chocolate" who told him that Mr. Lunsford was making threats toward him. This was the first that Plaintiff learned of Mr. Lunsford's specific threats toward him.

18.     Mr. Warren had no interest or intent to fight with or have any sort of confrontation with Mr. Lunsford.

19.     As Mr. Warren approached Main's trailer to clock out and end his shift, a crowd was awaiting him, with several placing bets, having apparently heard about Mr. Lunsford's threats.

20.     Mr. Lunsford then accosted Plaintiff, shouting into his face, including repeatedly and loudly calling Mr. Warren a "b----" and a "f-----" as well as other insults. Upon information and belief, Mr. Lunsford's use of these words would have been audible to all in the vicinity, including Main's supervisory employees.

21.     Mr. Warren did not instigate this confrontation and had made no statements of intent to fight or engage in a confrontation with Mr. Lunsford.

22.     Mr. Lunsford instigated physical contact with Plaintiff, battering Mr. Warren by bumping him with his chest and striking him in the chest with his forearm and elbow, while continuing to shout in Plaintiff's face and to call him highly offensive and profane names.

23.     Mr. Warren asked Mr. Lunsford to stop, but Mr. Lunsford continued to make offensive and threatening physical contact with Mr. Warren and to shout expletives and insults in his face, all on the worksite and immediately outside of Main's office trailer and with several Main employees gathered around watching, including Mr. Brown, a supervisor.

24.     Mr. Lunsford and Plaintiff are around the same height, but Plaintiff estimates that Mr. Lunsford is significantly larger and heavier than is Plaintiff.

25.     Finally, feeling that he was in immediate danger of Mr. Lunsford escalating the violence and that he was in reasonable apprehension of immediate bodily harm, Mr. Warren sought to protect himself and made a defensive strike to Mr. Lunsford's face. The two men then tussled for a very brief period while both remained standing, until separated. During this tussle, Mr. Lunsford attempted to place his hands around Plaintiff's throat.

26.     Mr. Warren did not instigate the confrontation or physical contact. He simply acted to protect himself in the face of an ongoing assault and battery, at the hands of a much

4

larger man, that reasonably appeared to him to be in immediate danger of becoming more violent and which he reasonably felt placed him in immediate danger of physical harm.

27.    Main had actual and/or imputed knowledge that Mr. Warren was not the aggressor and simply acted to protect himself in response to an ongoing assault and battery. Regardless, Main terminated Plaintiff for fighting.

28.    Upon subsequent information and belief, Mr. Lunsford was not actually terminated or otherwise disciplined, despite being the instigator and physical aggressor causing the altercation, of which Main had actual and/or imputed knowledge.[1]

## Count I--Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964

29.    The allegations of Paragraphs One through Twenty-Eight are incorporated by reference as if set out in full herein.

30.    At all times relevant herein, Defendant was an "employer" and Plaintiff was an "employee" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

31.    Defendant discriminated against Plaintiff with regard to the terms and conditions of his employment, specifically, with regard to his termination.

32.    The termination of Plaintiff constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

33.    The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

34.    Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: treating Plaintiff in a different and

---

[1] Defendant initially indicated to Plaintiff that it had also terminated Mr. Lunsford.

unfavorable manner than Mr. Lunsford because of his race and terminating him because of his race while taking no apparent disciplinary action against Mr. Lunsford.

35.     As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs.

36.     Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

### Count II—Wrongful Discharge in Violation of Virginia Public Policy
#### (*Bowman v. State Bank of Keysville*)

37.     Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Eight as if set out in full herein.

38.     Virginia common law recognizes wrongful discharge claims in violation of public policy.

39.     On or about December 16, 2015, Plaintiff engaged in an act of self-defense in the face of an ongoing assault and battery at the hands of another of Defendant's employees.

40.     Defendant terminated Plaintiff for engaging in said self-defense.

41.     In Virginia, assault is prohibited by Va. Code 18.2-57. However, the statute explicitly provides for preservation of common-law defenses to charges of assault or battery. Va. Code § 18.2-57(C). One common-law defense is self-defense. *See Harper v. Commonwealth*, 165 Va. 816, 183 S.E. 171 (Va. 1936) ("one who is assaulted may and usually does defend himself"). "Self-defense excuses or justifies a homicide or assault committed while repelling violence arrayed against the defendant." *Graham v. Commonwealth*, 525 S.E.2d 567, 572, 31 Va. App. 662 (Va. App. 2000).

42.     Under Virginia common law, "laws that do not expressly state a public policy, but were enacted to protect the property rights, personal freedoms, health, safety, or welfare of the general public, my support a wrongful discharge claim if they further an underlying, established public policy that is violated by the discharge from employment." *Mitchem v. Counts*, 259 Va. 179, 523 S.E.2d 246, 251 (Va. 2000).

43.     The public policy of the Commonwealth, as embodied by the Virginia Code, preserves and protects the right of citizens, including Mr. Warren, to take physical action against an aggressor in the name of self-defense.

44.     Defendant wrongfully discharged Plaintiff in violation of the public policy of Virginia due to his exercise of his right to self-defense in response to Mr. Lunsford's attack upon his person.

45.     Defendant's conduct has been intentional, deliberate, willful, wanton, malicious, reckless, and in conscious disregard of Plaintiff's rights.

46.     As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered monetary and non-monetary damages including loss of back pay, loss of front pay, loss of benefits, emotional distress, reputational harm, embarrassment, humiliation and loss of enjoyment of life.

47.     Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

WHEREFORE, the Plaintiff, Louis E. Warren, Jr., by counsel prays that this honorable Court grant him the following relief as allowable by law:

a.      Back Pay;

b.      Front Pay;

c.   Economic Damages;

d.   Compensatory Damages;

e.   Non-Economic Damages;

f.   Punitive Damages;

g.   Attorneys' fees and court costs associated with this suit; and

h.   Other such relief as may be appropriate to effectuate the purpose of justice.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated:        December 14, 2016                Respectfully submitted:


_____/s/_____
Steven B. Wiley (VSB No. 47531)
WILEY LAW OFFICES, PLLC
440 Monticello Ave., Suite 1817
Norfolk, Virginia 23510
757-955-8455
757-319-4089 facsimile
swiley@wileylawoffices.com