IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



**LOUIS E. WARREN**

      **Plaintiff,**

v.                                          **CIVIL ACTION NO. 4:16-cv-181-RAJ-LRL**

**MAIN INDUSTRIES INC.,**

      **Defendant.**

### *MEMORANDUM OPINION & ORDER*

This matter comes before the Court on Louis E. Warren Jr.'s ("Plaintiff" or "Mr. Warren") Petition for Equitable Relief. On October 12, 2017, a jury returned a verdict in favor of Mr. Warren finding Main Industries Inc., ("Defendant" or "Main Industries") liable for employment discrimination on the basis of race pursuant to Title VII of the Civil Rights Act of 1964. ECF Nos. 39-40. The jury awarded Plaintiff $150,000 in compensatory damages. *Id.* at 40. Now, before the Court is the issue of front pay and back pay damages. Having carefully reviewed the parties' pleadings, the Court finds this matter ripe for judicial determination without an additional hearing. The Court will consider the appropriateness of each relief in turn.

### A. Back Pay Damages

Generally, a prevailing plaintiff under Title VII is entitled to back pay. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 420-21 (1975). In *Albemarle Paper Co. v. Moody*, the United States Supreme Court ("Supreme Court") established a strong presumption in favor of back pay awards to victims of employment discrimination under Title VII. *Id.* The Supreme Court has held that back pay is awarded "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Id.* at 418. The back pay period of recovery commences from the time the

discriminatory act causes economic injury, and terminates on the date of judgment. *See Wells v. North Carolina Bd. of Alcoholic Control*, 714 F.2d 340, 342 (4th Cir. 1983). However, "the right of a successful Title VII plaintiff to claim back pay is limited in degree by the statutory duty to mitigate employer damages," and a plaintiff "forfeits his right to back pay if he refuses a job substantially equivalent to the one he was denied." *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985) (citations omitted). The defendant carries the burden of establishing that a plaintiff "did not exert reasonable efforts to mitigate . . . damages." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995) (citations omitted).

### 1. Time Period

The parties stipulated in the Final Pre-Trial Order that Plaintiff was terminated on December 16, 2015.[1] ECF No. 27. Thus, the Court will consider the back pay time period commencing on December 16, 2015, and terminating on October 12, 2017, the date the verdict was entered. *See* ECF No. 40.

### 2. Mitigation

Defendant argues that Plaintiff failed to mitigate damages and therefore is not entitled to back pay. *See generally* ECF No. 45. In support, Defendant argues that Plaintiff did not conduct reasonable job search activities, failed to submit a sufficient number of job applications during the period of his unemployment, improperly quit a job he was offered, and refused to report to an additional job opportunity. *Id.* at 1-2. The Court rejects Defendant's arguments and finds that Plaintiff presented sufficient evidence to support a reasonable effort to mitigate damages. Plaintiff presented evidence at trial, that following his termination, he inquired into approximately fifteen different painting companies for potential employment and submitted ten applications. *See* ECF No.

---

[1] The Final Pre-Trial order contains a typo that Mr. Warren was terminated on December 16, 2016, but both parties do not dispute that the correct termination date was December 16, 2015.

44-1 at 21. Defendant also employed himself by working approximately ten painting "side jobs" to earn money. *Id.* at 36-37.

Moreover, while Defendant argues that Plaintiff failed to mitigate damages because he did not use specific methods, *.i.e.,* conducting job searches online, checking the newspaper or other printed materials for job postings, *see* ECF No. 45 at 4, the Court is unpersuaded. On the contrary, such specificity is not required as Plaintiff need make only "reasonable efforts" to mitigate his damages. *See Martin,* 48 F.3d at 1343. Likewise, the Court rejects Defendant's argument that Plaintiff failed to mitigate damages because he did not apply for an employment with a specific company — Northrop Grumman. *See* ECF No. 45 at 3. Moreover, considering that Plaintiff utilized his sister to assist with job searching given his lack of familiarity with a computer, *see* ECF No. 44-1 at 39, 43-44, and, travelled to various companies in pursuit of potential employment opportunities, *id.,* the Court finds that Plaintiff made reasonable efforts to mitigate damages. The Court is also unpersuaded by Defendant's argument that Plaintiff failed to mitigate damages because he rejected two potential employment opportunities — Smithfield Food' dog food plant and a private painting company. *See* ECF No.45 at 3.

According to Plaintiff, he was offered and accepted a job at Smithfield Food, but quit shortly after his first day because the plant's smell made him sick. ECF No. 44-1 at 21, 40-41. The Court finds that Plaintiff did not fail to mitigate damages because he resigned from this position. The Supreme Court has held that a claimant "need not go into another line of work, accept a demotion, or take a demeaning position." *See Ford Motor Co. v. E.E.O.C.,* 458 U.S 219, 231 (1982). Instead, "the burden regarding mitigation requires the defendant to prove that substantially equivalent work was available and that the employee did not use reasonable diligence to obtain it." *See Crump v. United States Dept. Navy,* 205 F. Supp. 3d 730, 745 (E.D. Va. 2016) (internal quotations and citations omitted). Here, the Court finds that the Smithfield Food dog plant position was not comparable

3

employment. Indeed, that position would have required Plaintiff to work in an environment where the conditions made him sick. Moreover, the compensation for this position was significantly less given that the job at Smithfield paid $9.50 an hour while Plaintiff made $21.50 per hour while employed at Main Industries. *See* ECF No. 44-1 at 41; ECF No. 27 at 2.[2]

The Court is also unpersuaded by Defendant's argument that Plaintiff failed to take reasonable efforts to mitigate damages because he did not report to a job opportunity at a private painting company. ECF No. 45 at 3. At trial, Plaintiff testified that he was offered a job at a private painting company but was unable to work on the requested day because he had to see his attorney. ECF No. 44-1 at 41. The Court does not find Plaintiff's explanation unreasonable. Plaintiff's interest in his suit and his availability in assisting counsel to prepare a meritorious case, are not unreasonable interests or frivolous pursuits. Moreover, Plaintiff showed a willingness to work given testimony that on two occasions he was headed to work for the company but was informed while in route he was not needed. *See id.* at 41-42. Additionally, Defendant fails to demonstrate that the work was substantially equivalent. *See Ford*, 458 U.S at 231. On the contrary, Defendant simply asserts that Plaintiff's failure to maintain the employment was an unreasonable effort to support mitigation of damages. *See* ECF No. 45 at 4. This is not sufficient and thus Defendant fails to meet its burden.

In sum, the Court finds that Defendant fails to meet its burden to demonstrate that substantially equivalent work was available and that Mr. Warren did not use reasonable diligence to obtain it. Accordingly, Plaintiff's award of back pay will not be reduced or eliminated for failure to mitigate damages.

---

[2]The Court recognizes that a "claimant must consider accepting suitable, lower paying employment in order to satisfy the duty to mitigate damages." *Brady*, 753 F.2d at 1274-75 (4th Cir. 1985). However, a claimant need only accept the lower paying position "after an extended period of time searching for employment without success." *See id.* In this case, it appears this was Plaintiff's first job offer following the termination.

### 3. Calculation

In calculating a dollar amount for a back pay award, the Court aims to "to make the victims of unlawful discrimination whole," and restore them "so far as possible . . . to a position where they would have been were it not for the unlawful discrimination." *Albemarle*, 422 U.S. at 421 (internal quotation omitted). Moreover, in calculating a back pay award, a court should include other kinds of employment including employment compensation, *e.g.*, fringe benefits, reasonably anticipated salary increases, etc. *See Crump*, 205 F. Supp.3d at 745 (citations omitted). However, the burden is on the Plaintiff to demonstrate that these benefits were part of the earnings lost as a result of the unlawful employment action. *See id.*; *see also Herring v. Thomasville Furniture Indus., Inc.*, No. 4:96CV00081, 1999 WL 1937352, at * 5 (M.D. N.C. Aug. 31, 1999) (holding that Plaintiff failed to present evidence on which the Court could base an award of raises, bonuses, or lost benefits and that the Court would not speculate to those amounts in calculating a back pay award). Moreover, a back pay award should be reduced by any additional income earned during the back period. *See Brady*, 753 F.2d at 1273.

In this case, the Court has sufficient evidence to calculate a back pay award. Prior to trial, the parties stipulated that Mr. Warren was terminated on December 16, 2015, and that Mr. Warren was a full time employee with an hourly wage of $21.50. *See* ECF No. 27 at 2. In addition, the Court heard testimony at trial regarding Mr. Warren's wages. *See* ECF No.44-1 at 23-26. In his motion for equitable relief, Plaintiff argues that $60,000 per year is a conservative estimate of the yearly wages he would have earned during the time period between his unlawful termination and the jury verdict. *See* ECF No. 44. Defendant does not address this issue in its response. The Court finds that $60,000 per year is an appropriate figure for calculating Plaintiff's back pay award given its consistency with the stipulated facts in the final pre-trial order and evidence presented at trial.

Plaintiff however failed to produce any evidence of fringe benefits or other lost employment benefits, and the Court will not speculate as to those amounts in calculating a back pay award. First, Mr. Warren failed to include such evidence in his initial petition for equitable relief but asserted he could produce the evidence at additional proceedings. *See* ECF No. 44 at 7. On December 7, 2017, the Court issued an order and directed Plaintiff to submit any evidence in support of those benefits within five days of the order. ECF No. 47. Plaintiff failed to do so. Accordingly, the Court finds that Plaintiff had adequate opportunity to present this information. Plaintiff could have produced the evidence at trial, in his initial petition for equitable relief, and following the Court's December 7th order. *See Herring*, 1999 WL 1937352, at *5 (district court refusing Plaintiff's request to refer case to a magistrate judge for additional discovery and determination of lost raises, promotions, and other lost benefits in calculation of back pay award where Plaintiff had opportunity to present such information during pre-trial discovery and during trial).

The Court will also reduce Plaintiff's back pay award in the amount of $4,000 for earnings performing "side work" since his termination. *See* ECF No. 44 at 4. Thus, subtracting these subsequent earnings from the 60,000 per year, the total amount of back pay over the applicable time period is $106,000.00.[3] The Court will next address whether prejudgment interest will be added to Plaintiff's back pay award.

### 4. Prejudgment Interest

In *Loeffler v. Frank*, the Supreme Court held that consistent with the "make-whole" scheme of Section 706(g) of Title VII, "Title VII authorizes prejudgment interest as part of the back pay remedy in suits against private employers." 486 U.S. 549, 557 (1988). "Prejudgement interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until

---

[3] The Court's calculated time period for back pay was twenty-two (22) months; this number represents the approximate amount of time between Plaintiff's termination and the date of the jury verdict.

judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987). "Prejudgment interest, like all monetary interest, is simply compensation for the use or forbearance of money owed." *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir.1999); *see also Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th Cir. 1993) ("A dollar tomorrow, unless interest is added, does not equal a dollar today."); *City of Milwaukee v. Cement Div., Nat'l Gypsum, Co.*, 515 U.S. 189, 197 (1995) ("[p]rejudgment interest is not awarded as a penalty; it is merely an element of just compensation.").

The Fourth Circuit has held that the award of prejudgment interest and the applicable prejudgment interest rates lies within the Court's discretion. *Maksymchuk*, 987 F.2d at 1077; *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1031 (4th Cir.1993) (en banc). Thus, "[a]n appropriate method to calculate prejudgment interest is to compound the total amount of back pay for the period between Plaintiffs termination from [employer] and the date of the jury's verdict, at an interest rate corresponding to the average inflation rate for that time period." *See Mohammed v. Central Driving Mini Storage Inc.*, 128 F. Supp.3d 932, 949 (E.D. Va. 2015) (citing *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 391 (D. Md. 1997)[4].

The Court in *Ford* employed the following compound interest formula: $F = P [1 + (i/12)]^m$. Where F = future value of money (total of principal and interest), P = principal (back pay award), i = interest rate expressed as a decimal, and m = number of months compounded. 984 F. Supp. at 392 (citing Jose A. Sepulveda et al., Theory of Problems of Engineering Economics MICS 12 (1984)).

In this case, the back pay is compounded for the twenty-two (22) months between Plaintiff's termination and the date of the jury verdict.[5] The Court will use a 0.643% rate of interest, based on

---

[5] *See Ford*, 984 F. Supp. at 391, n.3 (the Court considered the date of "judgment" to be the date of the jury's verdict given that it did not enter judgement on the jury's verdict pending award of front and back pay damages).

7

the approximate average interest rate during the time period. Using the formula set forth in *Ford*, the Court will award a total of $107, 256.62 in back pay damages.

### B. Front Pay Damages

"The equitable remedy of front pay is generally available when an employer has terminated an employee unlawfully and the employee's reinstatement is not possible." *Taylor v. Republic Servs.*, 968 F. Supp. 2d 768, 802 (E.D.Va.2013) (quoting *Loveless v. John's Ford, Inc.*, 232 Fed. Appx. 229, 238 (4th Cir. 2007) (unpublished per curiam decision) (citation omitted)). Front pay is designed to place a plaintiff in the financial position he would have been in had he been reinstated. *Id.* (citing *Ford*, 984 F. Supp. at 386, 392). However, front pay should "be granted sparingly" because it could "result in an unfair windfall." *Id.*

Although "[t]he Fourth Circuit has not specifically enumerated a list of factors to consider in deciding to award front pay[,] [o]ther courts have considered the plaintiff's prospect of obtaining comparable employment; the time period of the award; whether the plaintiff intended to work; and whether liquidated damages have been awarded." *Id.* Moreover, "[b]ecause front pay necessarily involves speculation as to future events; the Court must judiciously scrutinize the record to determine whether future events are sufficiently predictable to justify such an award." *Ford*, 984 F. Supp. at 392 (citation omitted). The award of front pay, however, remains in the discretion of the Court. *Id.*

In this case, the Court finds that reinstatement is not an appropriate remedy given the nature of the claim, the time that has elapsed since Plaintiff's removal, and the facts developed at trial. Further, considering Title VII's goal to place a plaintiff in the financial position he would have been in had he been reinstated, and the circumstances present in this case, the Court finds that an award of front pay for one year is appropriate. In reaching its decision, the Court considers Plaintiff's testimony regarding his difficulties with obtaining comparable employment. *See* ECF No. 44-1 at 21,

39, 43-44 (Mr. Warren testified that he applied to approximately six to ten different painting companies and that he used online and newspaper sources to search for employment ).

On the other hand, the Court also heard testimony that Plaintiff had some success with finding employment including a private painting company and a food plant. *See id.* at 21, 41-42. Moreover, Plaintiff has considerable experience in the painting industry having worked in the industry well over 14 years. *See* ECF No. 27 at 2. Accordingly, the Court finds that although Plaintiff's employment opportunities have been foreclosed thus far, Mr. Warren does have the skill and ability to secure other "comparable employment" in the painting industry or other related industries. Thus considering all these factors, the Court finds that one year of front pay damages is appropriate. Any further compensation beyond that period would be mere speculation unsupported by the record. Accordingly, Plaintiff is awarded front pay damages in the amount of $60,000.00.

### C. Defendant's Affirmative Defense Under 42 U.S.C. § 2000e-5(g)(2)(B)

Defendant argues that the Court should deny Plaintiff's request for damages because it has established an affirmative defense under 42 U.S.C. § 2000e-5(g)(2)(B). ECF No. 45 at 4. Section 42 U.S.C. § 2000e-5(g)(2)(B) holds that:

> On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—
>
> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

Defendant contends it demonstrated at trial that it was Main Industries' policy that all employees who engage in physical altercations on the jobsite were subject to termination, and therefore has established its affirmative defense under § 2000e-5(g)(2)(B) because Mr. Warren would have been terminated absent an improper motivation. *Id.*

Defendant's argument does not persuade the Court. Here, although Main Industries articulated nondiscriminatory reasons for its actions, (*i.e.,* Mr. Warren was terminated because of a physical altercation with another employee while on the jobsite), the preponderance of the evidence does not support such a conclusion. Both parties stipulated prior to trial that there was an altercation between Mr. Warren and Roy Lunsford. *See* ECF No. 27. However, the parties disagreed as to who instigated the fight and if Mr. Lunsford made any violent physical contact with Mr. Warren.[6]

At trial, the Court heard testimony regarding this altercation and finds that the preponderance of evidence demonstrated that the altercation involved physical contact by both Mr. Warren and Mr. Lunsford. However, Mr. Warren was the only employee terminated. As such, the Court is unpersuaded by Defendant's argument that in the absence of an impermissible factor, *i.e.*, racial motivation, it would have taken the same action against Mr. Warren based on the company's policy of terminating employees who engage in physical altercations where here another employee involved in the same physical altercation was not terminated and remains employed.[7] *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 297–99 (4th Cir. 2010) ("[A]n informal policy is no less a policy," and its selective, erratic, or "case-by-case" application by the employer may suggest pretext."); *see also Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt."(internal quotations and citation omitted). The Court finds that Defendant fails to meet its burden and therefore will not limit its award of damages based on an affirmative defense under § 2000e-5(g)(2)(B).

---

[6] Plaintiff never denied striking or making any physical contact with Mr. Lunsford, and testified at trial that he struck Mr. Lunsford. *See* ECF No. 44-1 at 11.

[7] The parties stipulated in the final pre-trial order that Mr. Lunsford was not terminated after the incident and is still employed with Main Industries. *See* ECF No. 27 at 2. Based on testimony offered at trial, and the parties filings, the Court has no reason to believe that any subsequent action has been taken.

## CONCLUSION

For the reasons stated above, the Court **ORDERS** that Plaintiff be awarded back pay damages in the amount of $107, 256.62 and front pay damages in the amount of $60,000. Having resolved Plaintiff's request for equitable damages, the Clerk is **DIRECTED** to enter judgment in the amount of $317, 256.62. This judgment consists of a $150,000 jury verdict, $107, 256.62 in back pay damages, and $60,000 in front pay damages.

The Court **DIRECTS** the Clerk to electronically provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
January 2, 2018

Raymond A. Jackson
United States District Judge